[No. 30489-5-I.   Division One.   August 2, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. CLAY GUY
BELLEMAN, *Appellant.*

*John Henry Browne* and *Browne & Ressler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

SCHOLFIELD, J. — Clay Guy Belleman appeals his conviction of third degree assault, arguing that the trial court erred in instructing the jury and the evidence was insufficient for conviction. We affirm.

## FACTS

Early in the morning of June 2, 1991, Officer Kasprzyk was working as an off-duty police officer in Maple Valley accompanied by his police dog, Shumba. While in his parked patrol car, a man approached and said he had taken a woman home who claimed to have been raped and that the suspect was driving her car.

Officer Kasprzyk drove off looking for the woman's car. He saw an empty GMC truck that looked suspicious, parked in a secluded area. As he departed after looking at it, a small dark car approached the GMC, and then sped off when the driver apparently saw Officer Kasprzyk's patrol car. Kasprzyk left the area to gas up. When he returned, he saw the small car heading toward the GMC. As he followed, the car then drove fast down a rough dirt road and suddenly stopped. The male driver jumped out and fled. Moments later, Officer Kasprzyk heard over the radio that the small car belonged to the attempted rape victim.

Officer Kasprzyk and his dog pursued the man. Not far from the abandoned small car, Belleman was entangled in a barbed wire fence, struggling to get loose. Shumba grabbed Belleman's leg. Officer Kasprzyk, in full uniform, approached, identified himself, grabbed Belleman, and ordered him to stop struggling. Belleman began striking Kasprzyk and his dog. Despite the officer's orders to cease struggling, Belleman refused, saying only, "Call the dog off". Kasprzyk told Belleman he would call the dog off once he (Belleman) stopped struggling.

At one point, the struggle slowed down, and Kasprzyk radioed for help. Then Belleman resumed hitting Kasprzyk. Kasprzyk tried to get the suspect on his stomach and tried to calm him down with an approved choke hold.

Belleman managed to grab Kasprzyk's flashlight and struck him and Shumba. The two men stood, and Belleman forcefully swung the flashlight at Kasprzyk, barely missing his head. Kasprzyk then drew his gun and shot Belleman when he began to flee, hitting him in the leg.

At trial, Belleman testified that the woman whose car he was driving invited him into her car and they began hugging and kissing. She told him to drive, and after a short distance she jumped out of the moving car. He was driving around trying to find the victim because he was concerned for her welfare. He said he saw that a car was following him, but only its headlights were on and he did not know it was a police car.

After he abandoned the car on the dirt road, Belleman ran because he was panicked, intoxicated, and confused. He said he was attacked by a dog and heard a voice, but he did not know that the man was a police officer. The man began striking him and saying, "Shumba". Belleman claimed he fought back only to protect himself: "I remember doing whatever was necessary to fight for my life. I thought I was being killed . . .".

Belleman proposed several jury instructions having to do with self-defense and other instructions pertaining to the amount of force a person may use to resist an unlawful arrest. The trial court refused to give the self-defense instructions, holding that self-defense instructions do not apply to assaults committed in the course of lawful apprehensions.

The jury found Belleman guilty of second degree assault against the woman and third degree assault against Officer Kasprzyk. The court dismissed count 3, harming a police dog. Belleman appeals only his conviction of third degree assault. On appeal, Belleman contends that he was defending himself against an attack by a person he did not know

was a police officer, and the State had the burden of proving beyond a reasonable doubt the absence of self-defense.[1]

Belleman was charged under RCW 9A.36.031(1)(a) with third degree assault, a statute fundamentally identical to the statute interpreted in *State v. Goree*, 36 Wn. App. 205, 673 P.2d 194 (1983), *review denied*, 101 Wn.2d 1003 (1984).[2] In that case, the defendant argued that because he did not know the arrest was "lawful", he could not be convicted of third degree assault for striking a police officer as the officer was trying to arrest him. The court held at page 209 that the State does not have to prove the defendant believed the arrest was lawful:

> Mr. Goree's interpretation makes RCW 9A.36.030(1)(a) a subjective statute. His interpretation would allow one being arrested to decide whether he considers the arrest lawful and to decide the level of resistance he wishes to use. The primary purpose of the statute is "to *prohibit* assaultive behavior which interferes with the custodian's lawful obligations to insure a peaceful and orderly custody." (Italics ours.) *State v. Jury*, 19 Wn. App. 256, 269, 576 P.2d 1302 (1978). The use of force to prevent even an unlawful arrest which threatens only a loss of freedom is not reasonable. *State v. Rousseau*, 40 Wn.2d 92, 241 P.2d 447 (1952); *State v. Westlund*, 13 Wn. App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975). The law does not envision that all parties have to be in agreement or even understand the arrest is lawful at the time of the arrest. The facts show Mr. Goree intended to resist apprehension; the apprehension was lawful and an assault occurred in the resistance. These facts also show Mr. Goree's reaction was an unreasonable response and therefore an assault. *See also State v. Williams*, 29 Wn. App. 86, 627 P.2d 581 (1981).

---

[1] Belleman does not assign error to the absence of an instruction that he could not be found guilty unless he knew that Kasprzyk was a police officer. To the extent that this error was not preserved in accord with RAP 10.3, we rule against Belleman. *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

[2] RCW 9A.36.031(1)(a) states:

"(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

"(a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another . . .".

The defendant in *Goree* was convicted under the same language in former RCW 9A.36.030(1)(a).

The word "unlawful" in the statute is to prevent the State from prosecuting one who has used force to prevent an unlawful arrest. *State v. Hoffman,* 35 Wn. App. 13, 664 P.2d 1259 (1983). . . .

(Footnotes omitted.)

■ While the question in *Goree* was whether the defendant knew the arrest was "lawful", the issue here is whether Belleman knew Kasprzyk was a police officer. Belleman does not assert that his arrest was unlawful, nor could he reasonably, because the facts at the scene suggested Belleman had committed an offense. We conclude that where an arrest is lawful, but the defendant does not know he is being lawfully arrested, he does not have a right to self-defense nor to such an instruction.

RCW 9A.36.031(1)(a) does not explicitly require that the defendant know the arrester is a police officer, something the Legislature could easily have mandated. Not all lawful arrests are made by police officers. For example, a shop owner may arrest a shoplifter. *State v. Miller,* 103 Wn.2d 792, 794-96, 698 P.2d 554 (1985). Here, had Officer Kasprzyk merely been a private citizen, he could have lawfully apprehended Belleman under the same circumstances, and Belleman would be subject to prosecution under the same paragraph of the same statute, RCW 9A.36.031(1)(a). *See, e.g., State v. Jones,* 63 Wn. App. 703, 709, 821 P.2d 543 (conviction upheld under 9A.36.031(1)(a) where shoplifter assaulted store personnel who were apprehending him), *review denied,* 118 Wn.2d 1028 (1992).

Because police officers are not the only ones who can effect a "lawful apprehension or detention", Belleman's argument reduces itself to what the *Goree* court already resolved: whether the defendant's knowledge of the lawfulness of his arrest is relevant. The *Goree* court held that it was not. Similarly, in the present case it makes no difference that Belleman did not know Kasprzyk was a police officer, because a defendant can be charged with third degree assault against *non*police officers whose apprehension of the defendant is "lawful". The essential issue thus remains whether the arrest was lawful, not whether Belleman knew Kaspr-

zyk happened to be a police officer. The defendant's subjective assessment is irrelevant, even as to a claim of self-defense.

A holding to the contrary would throw into question every resisting arrest charge where the defendant claims he did not know his arrester was lawfully authorized. Such circumstances might arise where visibility is poor, for example, or where a police officer is undercover, or if an arrestee is simply confused about the identity of his arrester. Singling those arrests out as eligible for a claim of self-defense counters common sense and would hamper legitimate law enforcement. The defendant is still free to argue, as Belleman did, that the arrest was unlawful, or that his arrester used excessive force. If the arrest turns out to be unlawful, then the defendant has a defense that he resisted the arrest with reasonable force proportionate to the injury about to be received. *Seattle v. Cadigan*, 55 Wn. App. 30, 37, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989).

Consequently, we find that Belleman had no affirmative defense of self-defense under RCW 9A.36.031(1)(a), and the trial court properly refused to give the "mistaken belief" instruction,[3] because a subjective state of mind is insufficient to provide a defense of self-defense against a police officer.

Belleman next contends RCW 9A.36.031(1)(a) does not apply to assaults against police officers, and the State should have charged him under RCW 9A.36.031(1)(g), which is reserved exclusively for police officers. He argues that the Legislature meant to make RCW 9A.36.031(1)(a) inapplicable to police officers because RCW 9A.36.031(1)(g)[4] was added to

---

[3]The proposed mistaken belief instruction read:

"If a person acting as a reasonably prudent person mistakenly believes himself to be in danger of an offense being committed against him or his property, he has the right to defend himself by the use of lawful force against that apparent injury or offense even if he is not actually in any danger."

[4]The Legislature added subsection (g) to RCW 9A.36.031(1), which states that a person is guilty of third degree assault if he or she

"(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault."

the statute by the Legislature, and any change in a statute is presumed to substantively change the law. *State v. DuBois*, 58 Wn. App. 299, 303, 793 P.2d 439 (1990). He argues that the term "another" in RCW 9A.36.031(1)(a) is meant to connote that the subsection applies only to people other than police officers.

These arguments are not persuasive. Subsection (1)(g) allows for prosecution if a defendant assaults a law enforcement officer while he or she is performing an official duty, regardless of whether the officer is apprehending or detaining the defendant. Thus, a person who assaults an officer while the officer is walking his or her beat, or directing traffic, would be chargeable under RCW 9A.36.031(1)(g), but not under RCW 9A.36.031(1)(a). Consequently, adding (g) to the statute merely expanded the scope of behavior that could be charged as third degree assault.

Additionally, the Legislature made no changes to subsection (1)(a) suggesting the statute henceforth was to apply only to assaults against people other than police officers. Under the circumstances presented, the State could have charged Belleman under either subsection (1)(a) or (1)(g). The ability of the State to choose between charging the defendant under the two subsections does not violate equal protection, in part because the elements are different. Nor is subsection (1)(g) a special statute, because a defendant violating (1)(g) does not always thereby violate (1)(a). The record also reflects sufficient evidence to support Belleman's conviction under the crime charged.

Affirmed.

COLEMAN and GROSSE, JJ., concur.