[No. 12453-3-III.    Division Three.    February 1, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. GERHARD CRIDER, *Appellant.*

*Mary E. Schultz* and *Mary E. Schultz & Associates, P.S.,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Edward D. Hay, Deputy,* for respondent.

THOMPSON, C.J. — Gerhard Crider appeals his conviction for third degree assault. He contends: (1) The State charged him under the wrong subsection of RCW 9A.36.031; (2) the court erred when it denied his motion to suppress evidence obtained as a result of an unlawful arrest; and (3) the evidence does not support the court's finding that he used excessive force in resisting the officer. We affirm.

The charge against Mr. Crider arose out of an incident occurring the evening of March 22, 1991, in which Spokane Police Officer Kevin Huddle attempted to detain him on a misdemeanor traffic charge. Specifically, the information against Mr. Crider alleged he committed third degree assault, a violation of RCW 9A.36.031(1)(f),[1] upon Officer Huddle "who was performing his . . . official duties at the time". Mr. Crider moved to suppress all evidence of the alleged assault on the ground it was the fruit of an unlawful arrest.

Mr. Crider and Officer Huddle gave different accounts of the events surrounding Mr. Crider's arrest. According to Mr. Crider, he was in his backyard drinking with his neighbor, Rick Tucker, on the night in question. Mr. Tucker, with permission, went for a ride on Mr. Crider's motorcycle. When Mr. Tucker returned, he told Mr. Crider he was going home to use his bathroom.

"About 10 seconds later", a police car pulled into Mr. Crider's driveway. The officer asked if he had just gotten off the motorcycle; Mr. Crider replied he had not. When Mr. Crider turned to go into his back door,

> [t]he officer . . . grabbed me on the back of my collar and tried to pull me toward him and over the fence. . . . I never hit him. I was just trying to get away from him. . . .
> . . . I felt my hair being grabbed. I . . . remember the officer coming over the fence right on top of me . . . I remember

---

[1] The information is incorrect. At the time of the charge, the statute had been amended and the applicable subsection was designated (1)(g).

flipping him over onto the ground and holding him in a head-lock to try and subdue him.

Mr. Crider stated he held Officer Huddle in a headlock until another officer arrived on the scene. The second officer grabbed him by the hair, then shoved him face down into the ground. He remembered "someone grabbing hold of the back of my head and pounding my face into the concrete". Mr. Crider's wife, Sue Ann, and his neighbors to the east, Rick Tucker and Pam Smith, agreed with Mr. Crider's description of events.

Officer Huddle stated he observed a man on a motorcycle make a U-turn on Wellesley and enter a driveway. Officer Huddle pulled into the driveway behind the cyclist. The cyclist got off the motorcycle and jumped a chain link fence into the backyard. Officer Huddle said "[t]here were no other people near the motorcycle or yard at that time". When the man (later identified as Mr. Crider) walked toward the back door of the residence, Officer Huddle approached the fence and asked to see his driver's license and registration. Mr. Crider responded he was on private property. Officer Huddle attempted to open the latch to the gate, but Mr. Crider sicked his dog on him and slammed the gate on his hand.

As Officer Huddle continued to insist he wanted to talk to him, Mr. Crider turned to walk inside the house. Officer Huddle grabbed his coat by the shoulder and pulled him toward him. At that point, Mr. Crider reached across the fence and hit Officer Huddle in the face with his fist. Officer Huddle tried to pull Mr. Crider over the fence, but he resisted. Officer Huddle then jumped the fence. A scuffle ensued, during which Mr. Crider straddled the officer on the ground, hit the officer several times in the face, and attempted to choke him. When the backup officer arrived, he pulled Mr. Crider off Officer Huddle. Mr. Crider continued to struggle until handcuffed and placed in the back of a patrol car.

The court denied Mr. Crider's motion to suppress the evidence. Trial was had on the parties' stipulation that the court could consider, in lieu of their testimony, Officer Huddle's report and the reports of the various police officers who

were involved in and who investigated the incident. The court found Mr. Crider struck Officer Huddle in response to the officer grabbing his shoulder. The court concluded:

> I do not believe that Officer Huddle had the right to reach [across] the fence and grab ahold of Mr. Crider . . . However, legally, Mr. Crider had no right to turn around and strike the officer . . . and the Court does not believe that there was any basis for finding that . . . there was a legitimate concern and for self-defense.

It therefore judged Mr. Crider guilty as charged.

First, was Mr. Crider charged and convicted under the proper subsection of RCW 9A.36.031?

RCW 9A.36.031 provides:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
> (a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the *lawful* apprehension or detention of himself or another person, assaults another; or
>
> . . . .
>
> (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

(Italics ours.) Mr. Crider contends that RCW 9A.36.031(1)(a) and (1)(g) are separate, concurrent offenses. If concurrent offenses exist, the State is constitutionally bound to charge the specific offense. *See State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984); *State v. Liewer*, 65 Wn. App. 641, 646, 829 P.2d 236 (1992). According to Mr. Crider, RCW 9A.36.031(1)(a) requires proof that the detention was *lawful*.

██ Two statutes are concurrent when each violation of the *specific* statute also violates the *general* statute. *Shriner*, at 580. The determinative factor is whether it is possible to commit the specific crime without also committing the general crime; *not* whether in a given instance both crimes are committed by the defendant's particular conduct. A person can violate subsection (1)(a) by assaulting *anyone* in the course of resisting lawful detention. *See State v. Miller*, 103 Wn.2d 792, 795, 698 P.2d 554 (1985) (defendant guilty of

violating subsection (1)(a) when he assaulted store personnel while resisting detention for suspected shoplifting). Subsection (1)(g) requires proof of an assault on "a law enforcement officer or other employee of a law enforcement agency . . .". Subsection (1)(a) and subsection (1)(g) are not concurrent offenses. *See State v. Belleman*, 70 Wn. App. 778, 783-84, 856 P.2d 403 (1993). Consequently, the rule requiring application of the specific statute to the exclusion of the general statute does not apply here.[2]

Second, did the court err when it denied Mr. Crider's motion to suppress? He argues Officer Huddle's entry onto his property was unlawful, and evidence obtained after that entry is fruit of the poisonous tree.

█ We need not decide whether the entry was unlawful. "Evidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment." *United States v. Waupekenay*, 973 F.2d 1533, 1538 (10th Cir. 1992).[3] *See also State v. Aydelotte*, 35 Wn. App. 125, 132, 665 P.2d 443 (1983); 1 W. LaFave & J. Israel, *Criminal Procedure* § 9.4(f), at 759-60 (1984). Mr. Crider's assault upon Officer Huddle is "separate" and "independent" of the traffic infraction which

---

[2]After this opinion was filed, Mr. Crider moved for reconsideration. He contended that *State v. Goree*, 36 Wn. App. 205, 673 P.2d 194 (1983), *review denied*, 101 Wn.2d 1003 (1984) was controlling. *Goree* was decided under a previous version of RCW 9A.36.031. That version contained subsection (1)(a), but not subsection (1)(g). *Goree*'s analysis of subsection (1)(a) does not apply to subsection (1)(g), under which Mr. Crider was convicted.

In his motion for reconsideration, Mr. Crider stated he did not intend to argue that RCW 9A.36.031(1)(a) and (g) are concurrent offenses. But he did not make any other argument that would support this court holding as a matter of law that the legality of the detention is an element of third degree assault, based upon subsection (1)(g).

[3]*Waupekenay* cites several cases from other jurisdictions in support of its holding, including, *e.g.*, *United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir. 1984), *cert. denied*, 472 U.S. 1017 (1985); *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984); *United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir.), *cert. denied*, 404 U.S. 945 (1971); *People v. Pearson*, 150 Cal. App. 2d 811, 815-19, 311 P.2d 142, 145-46 (1957); *People v. Klimek*, 101 Ill. App. 3d 1, 6, 427 N.E.2d 598, 603 (1981).

Officer Huddle was investigating. Accordingly, it is not subject to exclusion under the Fourth Amendment, whether the entry was legal or illegal.

Third, did the court err when it found Mr. Crider's use of force against Officer Huddle was unreasonable because the arrest, even if unlawful, threatened only a loss of freedom?

■ The parties agree on the law: "A citizen has the right to resist an unlawful arrest *so long as that resistance is reasonable in light of all the circumstances.*" (Italics ours.) *Kennewick v. Keller*, 11 Wn. App. 777, 787, 525 P.2d 267 (1974). " 'The use of force to prevent even an unlawful arrest *which threatens only a loss of freedom* is not reasonable.' " (Italics ours.) *Seattle v. Cadigan*, 55 Wn. App. 30, 37, 776 P.2d 727 (quoting *State v. Goree*, 36 Wn. App. 205, 209, 673 P.2d 194 (1983) (citing *State v. Rousseau*, 40 Wn.2d 92, 241 P.2d 447 (1952)), *review denied*, 101 Wn.2d 1003 (1984)), *review denied*, 113 Wn.2d 1025 (1989). *See also State v. Ross*, 71 Wn. App. 837, 843, 863 P.2d 102 (1993).

Here, the trial court found (1) Mr. Crider struck Officer Huddle when the officer grabbed his shoulder, and (2) at that point, Mr. Crider did not have reason to fear any injury to himself. These findings are supported by Officer Huddle's statement in his police report which was allowed into evidence by stipulation. There was no error.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

After modification, further reconsideration denied March 3, 1994.